56 F.3d 65
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Marvin J. REDDING, Plaintiff-Appellant,
v.
Donna SHALALA, Secretary, Department of Health and Human
Services, Defendant-Appellee.
 No. 94-3471.
 United States Court of Appeals, Sixth Circuit.
 May 16, 1995.
 
 Before: KENNEDY and MILBURN, Circuit Judges; and WISEMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, Marvin J. Redding, brought this action against defendant Donna Shalala, Secretary, Department of Health and Human Services. The issue on appeal is whether the Secretary's decision that appellant is not disabled is supported by substantial evidence. The Secretary found that appellant was not entitled to disability benefits under the Social Security Act based on the fact that there was insufficient evidence to show that the onset of appellant's mental disability had occurred prior to the expiration of his insured status. The district court upheld the Secretary's finding. For the following reasons, we affirm.
 
 Statement of Case
 
 2
 Redding filed the present application for disability insurance benefits (DIB) on February 7, 1984 alleging disability since March 2, 1979. Redding stated that he was disabled as a result of left leg and right arm pain and that he was depressed. Until 1979, Redding had held the following jobs at General Motors: general assembly, placement, repair, and rework.
 
 
 3
 On June 15, 1990, an Administrative Law Judge (ALJ) conducted a hearing at Redding's request and found that he was not disabled, after considering his March 1982 application[1] and his current application. The district court affirmed the ALJ's decision on September 11, 1986 but remanded the application for an evaluation of a mental impairment, pursuant to the new mental impairments regulations, for the period prior to March 31, 1984, the date Redding was last insured. A hearing was held on January 26, 1990 and was completed on May 11, 1990. On June 27, 1990, the ALJ found that Redding did not have a severe mental impairment and therefore was not under a disability and not entitled to DIB. On June 14, 1991, the Appeals Council denied Redding's request for review, and the ALJ's decision stands as the final decision of the Secretary.
 
 
 4
 Redding filed a complaint on July 3, 1991 in federal district court pursuant to 42 U.S.C. Sec. 405(g). The case was referred to Magistrate Judge Jack B. Streepy who issued a report and recommendation on January 11, 1994, finding that the Secretary's decision was supported by substantial evidence. District Court Judge Frank J. Battisti adopted the report and recommendation. Appellant filed a timely notice of appeal to this Court on April 25, 1994.
 
 Statement of Facts
 
 5
 Redding was first seen by a mental health professional on July 24, 1984, nearly four months after his insured status expired. Dr. John Edward, a psychologist at the Child and Adult Mental Health Center of the Parkview Counseling Center (Parkview), made an initial diagnostic impression of adjustment disorder with depressed mood but ruled out a dysthymic disorder.[2]
 
 
 6
 Dr. K. R. Prasad, a psychiatrist at Parkview, saw Redding in August 1984 and diagnosed dysthymic disorder. In January 1985, Dr. Prasad noted that Redding was nervous, had sleep and appetite irregularities, but did not have suicidal thoughts. In July 1985, Dr. Prasad's diagnosis continued to be dysthymic disorder with no suicidal ideation. On Redding's last session at Parkview on February 10, 1986, Dr. Prasad diagnosed dysthymic disorder but felt Redding's condition had improved.
 
 
 7
 In December 1986, Dr. Nissim Benado, a psychiatrist, found that Redding had a major depression, a generalized anxiety disorder, and a passive aggressive personality disturbance.
 
 
 8
 In May and August of 1988, Vicki McCreary, Ph.D., and John Draeger, M.D., completed psychiatric review technique forms concerning Redding's mental condition as of March 31, 1984, the date Redding was last insured for purposes of DIB. Both medical professionals indicated that there was insufficient medical evidence of record to determine the claimant's mental condition prior to March 1984.
 
 
 9
 At the hearing on May 11, 1990, Joel Steinberg, M.D., a medical expert and specialist in psychiatry and internal medicine, reviewed the evidence, listened to the testimony, and opined that the record did not establish that Redding had a severe mental impairment on or before March 31, 1984. He stated that there was no evidence of a severe mental impairment until at least 1986, noting that an adjustment disorder is milder than a dysthymic disorder which, in turn, is milder than a major depression.
 
 Standard of Review
 
 10
 Pursuant to 42 U.S.C. Sec. 405(g), we must uphold the Secretary's factual findings as conclusive if those findings are supported by substantial evidence. Kinsella v. Schweiker 708 F.2d 1058, 1059 (6th Cir. 1983). The Supreme Court has defined the term "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court has characterized "substantial evidence" as more than scintilla of evidence. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976) (citing Combs v. Gardner, 382 F.2d 949, 956 (6th Cir. 1967)).
 
 Onset of Disability
 
 11
 Under the Social Security Act, a disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment[3] that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. Sec. 423(d)(1)(A). A claimant has the ultimate burden of establishing entitlement to disability insurance benefits by proving the existence of such a disability. Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir. 1993). See also Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir. 1978); Halsey v. Richardson, 441 F.2d 1230, 1236 (6th Cir. 1971); Bloch v. Richardson, 438 F.2d 1181, 1181 (6th Cir. 1971). To establish entitlement to benefits, a claimant must show that he not only had an impairment prior to the expiration of his insured status but that he actually became disabled prior to that time. Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990); Estep v. Weinberger, 525 F.2d 757 (6th Cir. 1975). Furthermore, in cases involving allegations of a mental impairment in which the claimant has not been hospitalized and no documented evidence of a debilitating condition has been collected through treatment or counseling, the Secretary may properly render a determination of no disability. See Cornette v. Secretary of Health and Human Services, 869 F.2d 260, 263-64 (6th Cir. 1988).
 
 
 12
 In the instant case, the Secretary determined that Redding did not have a mental impairment prior to the expiration of his insured status because the evidence failed to support the claimant's allegation that he had a severe mental impairment on or before March 31, 1984. Having written in his application that he was depressed, Redding argues that the application date should be the starting point for determining the onset of his disability and asserts that his unemployment prior to that time is consistent with his allegations as to his onset date. Redding, however, was not evaluated by a mental health professional until July 24, 1984, four months after his insured status had expired. At that time, he was diagnosed with a very mild mental disorder. This evidence indicates that prior to March 31, 1984, Redding had only a slight abnormality which had only a minimal effect on his ability to work. In fact, it was not until December of 1986, two years after the expiration of his insurance status, that a psychiatrist found that his condition had developed into major depression, a generalized anxiety disorder, and a passive-aggressive personality disturbance. Three other medical experts confirmed that the evidence failed to establish the existence of a severe impairment prior to March 31, 1984: Dr. McCreary, Dr. Draeger, and Dr. Steinberg. After considering the evidence, Drs. McCreary and Draeger both stated that there was insufficient medical evidence of record to determine the claimant's mental condition prior to March 1984. Dr. Steinberg, the medical expert at the administrative hearing, reviewed the evidence, questioned Redding, and opined that the record did not establish a severe mental impairment prior to March 31, 1984. In fact, Dr. Steinberg felt that the record did not document a severe mental impairment until at least December of 1986.[4] Thus, the objective medical evidence[5] in this case does not indicate that Redding had any significant deficits that were supported by medically acceptable clinical and laboratory diagnostic techniques.[6] Therefore, we find that the evidence substantially supports the Secretary's determination that Redding did not have a severe mental impairment before March 31, 1984.
 
 Combination of Disabilities
 
 13
 Redding argues that the ALJ failed to consider properly his combination of impairments. Redding submits that while none of his impairments may be severe enough to constitute a disability individually, the combination of them might prove to be a severe impairment. The determination with respect to Redding's knee injury was decided and settled previously,[7] and the district court specifically stated in its September 11, 1986 decision that "[p]laintiff's testimony did not indicate pain of a nature to be considered disabling, particularly in light of various medical reports and assessment offered as evidence." Furthermore, this application was remanded solely for an evaluation of Redding's alleged mental impairment, in accordance with the new mental impairment regulations. Even considering Redding's impairments in combination, as the ALJ did, the evidence still substantially supports the Secretary's finding that Redding was not physically or mentally disabled as of March 31, 1984. See Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 591-92 (6th Cir. 1987), cert. denied, 484 U.S. 1075 (1988).
 
 National Economy
 
 14
 Redding states that the ALJ originally found that he was unable to perform his past work as an assembler and argues that there has been no showing that he can do any other substantial gainful activity that exists in the national economy. A claimant's impairment must be of such severity that he not only is unable to do his previous work but is unable to engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. Sec. 423(d)(2)(A). Under the Secretary's finding, however, Redding never even made a prima facie case that he was entitled to benefits. The Sixth Circuit has held that a claimant can establish a prima facie case by showing a medical basis for an impairment that prevents him from engaging in his occupation. Bogle, 998 F.2d at 347 (quoting Hephner, 574 F.2d at 361). Only after the claimant has established a prima facie case, does the burden shift to the Secretary to show that there is work in the national economy that he can perform. Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 684 (6th Cir. 1992); Hephner, 574 F.2d at 362. See also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).[8] Because Redding failed to prove the existence of a mental disability, the Secretary was not required to show that Redding could perform other kinds of substantial gainful work in the national economy. Furthermore, the medical evidence simply does not portray Redding as someone who was disabled to the extent that he is barred from all substantial gainful employment.
 
 Conclusion
 
 15
 The evidence substantially supports the Secretary's finding that the claimant did not have a mental impairment prior to the time his insurance status expired. We decline to disturb the district court's decision affirming the Secretary's finding.
 
 
 16
 Judgment affirmed.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 The claimant, Marvin J. Redding, filed an application for disability insurance benefits (DIB) and SSI on March 17, 1978 and was awarded a closed period of disability from March 8, 1977 through December 31, 1978. Redding reapplied for DIB on September 26, 1979, but an Administrative Law Judge (ALJ) found he was not disabled in an August 1980 decision. The district court affirmed that decision on March 18, 1982. On that same day, Redding filed another application for DIB; the application was denied initially and on reconsideration. Defendant asserts that Redding did not pursue these claims further and that they are not now before the court because they have become res judicata
 
 
 [2]
 Dysthymic disorder is described as a mild, chronic syndrome or disturbance of mood, not the severity of the depressive syndrome
 
 
 [3]
 A physical or mental impairment is defined as an impairment resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. Sec. 423(d)(3)
 
 
 [4]
 See Atterberry v. Secretary of Health and Human Services, 871 F.2d 567, 570 (6th Cir. 1989) (indicating that a medical expert's opinion may constitute substantial evidence when it is supported by the other medical evidence of record)
 
 
 [5]
 Redding asserts that the Secretary completely ignored Social Security Ruling 83-20 in determining the onset of his mental disability. Social Security Ruling 83-20 addresses the determination of the onset of a disability under the provisions of Titles II and XVI of the Social Security Act and its implementing regulations. Determining the proper onset date of slowly progressive impairments can be difficult, especially when adequate medical records are not available. In such cases, the onset date must be inferred from medical and other evidence that describes the history and symptomatology of the disease process. That is, onset need not be established on medical grounds alone. When reasonable inferences regarding the progression of the impairment cannot be made from the evidence in the file and further medical evidence is unavailable, other sources of evidence may be necessary, such as information from family members, friends, and former employers that explains the unavailability of medical evidence and that supplies additional information on the individual's progressive condition. Furthermore, because mentally ill people may be unable to furnish necessary information concerning onset, the decisionmaker should attempt to ascertain the onset date by contacting persons who may have "information about previous hospitalizations, medical treatment, or manifestations of symptoms prior to the current hospitalization," although such contacts should be made only upon authorization by the individual or his representative. SSR 83-20. In this case, there is no non-medical evidence in the record indicating that Redding had any mental disability prior to March 1984. Contrary to what Redding argues, the decisionmakers do appear to have followed the guidelines appropriately
 
 
 [6]
 See 42 U.S.C. Sec. 423(d)(3)
 
 
 [7]
 The issue of whether the knee injury is a servere impairment is not before this Court at this time
 
 
 [8]
 In Bowen v. Yuckert, the Supreme Court discussed the five-step sequential evaluation process used by the Secretary to determine whether a claimant is disabled. 482 U.S. 137, 140-42 (1987). First, if the claimant engages in "substantial gainful activity," benefits will be denied. Id. at 140. Second, if the claimant does not have a medically severe impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities, the disability claim will be denied. Id. at 140-41. See also Gist v. Secretary of Health and Human Services, 736 F.2d 352, 357-58 (6th Cir. 1984) (validating the severity regulation); Farris v. Secretary of Health and Human Services, 773 F.2d 85, 89-90 (6th Cir. 1985) (holding that an impairment is considered not severe only if, regardless of the claimant's age, education, and work experience, the impairment is a slight abnormality that has only minimal effect on the claimant's ability to work). Third, if the impairment is severe, then the claimant will be presumed to be disabled if his impairment meets or equals one of acknowledged impairments considered by the Secretary to be so severe as to preclude substantial gainful activity. Bowen, 482 U.S. at 141. Fourth, if the impairment does not prevent the claimant from performing work he has performed in the past, he will not be considered disabled. Id. at 141-42. Finally, the claimant may receive benefits only if he is unable to perform other work in the national economy in light of his age, education, and work experience. Id. at 142. If a determination that an individual is or is not disabled can be made at any step, evaluation under a subsequent step is unnecessary. See 20 C.F.R. Sec. 404.1520(a) (1994)